IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ALICIA DAVENPORT, | * | |
| Plaintiff, | * | |
| vs., | * | CASE NO. 4:06-CV-150 (CDL) |
| CITY OF COLUMBUS, GEORGIA, *et al.*, | * | |
| | * | |
| Defendants. | * | |

O R D E R

Presently pending before the Court is Defendants' Motion for Stay Pending Appeal of the Court's Order denying summary judgment to Defendants Boren, Horiuchi, Spear and Walton on Plaintiff's claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 (Doc. 110). The Court previously found that genuine issues of material fact exist as to whether Boren, Horiuchi, Spear and Walton committed acts which, if they occurred, would violate clearly established law. (*See* Order on Defendants' Motion for Summary Judgment, Doc. 103, at 59-60 [hereinafter Order on MSJ].) Accordingly, the Court determined that Boren, Horiuchi, Spear and Walton were not entitled to summary judgment based on qualified immunity because certain fact issues must be resolved before a final qualified immunity ruling can be made.

The Court subsequently scheduled the case for trial during its upcoming September term. Defendants have now appealed the Court's ruling denying their motions for summary judgment and seek to stay

1

the trial until the Court of Appeals has considered their appeal. *See* Fed. R. App. P. 8(a)(1) (requiring initial motion for stay pending appeal to be made in the district court). Because the Court's denial of Defendants' motion for summary judgment is not a final order that is immediately appealable and because an interlocutory appeal will create additional unwarranted delay in the resolution of this action, the Court denies Defendants' Motion to Stay. Moreover, the Court finds that Defendants should have no reasonable expectation that the Court's summary judgment order is immediately appealable and thus their appeal at this time is frivolous. Accordingly, their filing of the Notice of Appeal does not divest this Court of jurisdiction to proceed with the trial. *Cf. United States v. Dunbar*, 611 F.2d 985, 989 (5th Cir. 1980)(noting that notice of appeal does not divest district court of jurisdiction to proceed when appeal is frivolous).

BACKGROUND

The Court recognizes that the qualified immunity defense is designed not only to protect government officials from individual liability when they have not violated clearly established law, but it is likewise intended to limit the unreasonable intrusion into their affairs through the litigation process. Thus, decisions on qualified immunity should be made when possible at the earliest opportunity, with the recognition that an erroneous denial of

qualified immunity strips a government official of the protection intended under the law.

Although not dispositive of the pending Motion to Stay, the Court also observes that the erroneous granting of qualified immunity and/or an unwarranted appeal of a qualified immunity decision affects the rights of an aggrieved party who has the right to vindicate her legal rights without unjustified delay. Along these lines, the Court notes that this action was filed on December 29, 2006. Defendants never filed a motion to dismiss, and they agreed to a scheduling/discovery order that permitted broad discovery which did not have to be completed until July 13, 2007. As that discovery deadline approached, Defendants jointly moved for a five-month extension of the discovery period until December 31, 2007. Defendants filed their motions for summary judgment on January 4, 2008, seeking for the first time a ruling to dismiss the individual claims against Defendants based upon qualified immunity. After several extensions granted to all parties regarding the filing of briefs, the Court held a hearing on the motions for summary judgment on June 24, 2008. The Court issued its order on July 23, 2008 granting in part and denying in part Defendants' motion.

Based on the foregoing, it is clear that Defendants have not vigorously sought to protect themselves from exposure to the litigation process until it became apparent that they may have to spend a few days in a jury trial. They did not seek summary judgment

3

until after the case had been pending for approximately one year; they agreed to extensive discovery over a one year period. While the Court granted these extensions and does not now find that they were unwarranted, the Court simply observes as background the lack of zeal in getting the qualified immunity issue decided sooner and the fact that it has taken approximately 21 months for Plaintiff to get her case to trial. Now, with renewed zeal to avoid the indignity of being subjected to the litigation process (*i.e.*, a jury trial), Defendants seek additional delay through the interlocutory appeal of the Court's denial of their motion for summary judgment on their qualified immunity defenses.[1]

The Court hastens to add that if the Court's interlocutory ruling is appealable under the law as a matter of right, then its hands are tied and further delay will be inevitable. However, it is clear to the Court that the order is not now appealable, and any further delay in this case is unwarranted.

DISCUSSION

The law is clear that not every denial of summary judgment on a qualified immunity defense is immediately appealable. As held by the Supreme Court, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial

---

[1] The Court is perplexed by Plaintiff's acquiescence in Defendants' motion for additional delay. Notwithstanding Plaintiff's apparent lack of eagerness to face a jury, the Court has a duty to the administration of justice, which requires the denial of unwarranted requests for delay.

4

record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones,* 515 U.S. 304, 319-320 (1995). In the present action, the Court determined that based upon the pretrial record genuine issues of material fact exist as to whether Defendants are entitled to qualified immunity. The Court did not decide that Defendants were or were not entitled to qualified immunity. The Court simply decided that in order to make the qualified immunity determination, genuine issues of material fact must be resolved by the factfinder. Therefore, summary judgment was not appropriate. The Supreme Court has made clear that this type denial of summary judgment is not immediately appealable. *Id.*

To make it clear that the Court denied Defendants' motion for summary judgment on their qualified immunity defenses based upon the finding of genuine issues of material fact, the Court finds it appropriate to set forth in detail in this Order its rationale. Preliminarily, the Court notes that "[e]ven at the summary judgment stage, not all defendants entitled to the protection of the qualified immunity defense will get it." *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002). The protection of qualified immunity is only warranted at the summary judgment stage if the Defendants can "establish that there is no genuine issue of material fact preventing them from being entitled to qualified immunity." *Id.* "[I]f the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are

inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial." *Id.* In other words, the Court must consider Plaintiff's "best case" and decide whether Defendants committed a violation of clearly established law. *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).[2]

With regard to Plaintiff's claims against Horiuchi, Spear and Walton, the Court found that Plaintiff's "best case" supported by the evidence is as follows: (1) Horiuchi, Spear and Walton sent Plaintiff on undercover assignments to potentially dangerous clubs without cover or operational funds; (2) similarly situated white and male officers were not sent on undercover assignments without cover or operational funds; and (3) Defendants offered no legitimate nondiscriminatory reason for their actions. (Order on MSJ 40-43; *see also id.* at 4-31 (reciting facts, viewed in the light most favorable to Plaintiff).) Therefore, the Court found that Plaintiff's "best case" gives rise to an inference of intentional racial discrimination, which Defendants failed to rebut. *See McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (describing burden-

---

[2]The Court notes that *Robinson* was an excessive force case, so even though the facts had to be viewed in the light most favorable to the plaintiff, the question whether the officer's use of force was unreasonable and therefore a constitutional violation had to be determined from the perspective of the officer. *Robinson,* 415 F.3d at 1255. In this case, the key question is simply whether there is sufficient evidence from which a jury could conclude that Defendants intentionally discriminated against Plaintiff because of her race or intentionally retaliated against her for complaining of racial discrimination.

shifting framework used in employment discrimination cases under Title VII and 42 U.S.C. § 1981); *see also Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007) (per curiam) ("Both Title VII and § 1981 have the same requirements of proof and present the same analytical framework.") Accordingly, the Court found that this issue cannot be decided as a matter of law; the facts must be decided by a jury.

Defendants argue that the evidence shows that officers outside of Plaintiff's protected class were treated the same as Plaintiff, so at most the officers merely violated departmental policy, and such a violation cannot amount to intentional discrimination. The Court previously considered Defendants' argument that similarly situated agents outside Plaintiff's protected class, including Walton and Spear,[3] were treated the same as Plaintiff. However, the Court found that Plaintiff had pointed to facts sufficient for a jury to find that she was *not* treated the same as undercover officers outside her class, acknowledging that a jury could also find that she was not treated differently. Thus, the Court simply concluded that genuine issues of material fact exist as to whether Defendants intentionally discriminated against Plaintiff because of her race. It cannot be

---

[3]Defendants cite their Statement of Undisputed Material Facts ¶ 47: Spear and Walton "visited clubs alone" like Plaintiff did. Defendants' renewed argument that Plaintiff was treated the same as Walton and Spear appears to misstate the record. Walton and Spear were sent to undercover clubs alone but with other officers in close proximity providing support. (Walton Dep. 49:12:50-17, Aug. 29, 2007.) Plaintiff's chief complaint is that she was sent on undercover assignments without *any* cover.

7

reasonably disputed that if a jury concludes that Plaintiff was discriminated against because of her race, such discrimination is a clear violation of § 1981 and the Equal Protection Clause, and Defendants would not be entitled to qualified immunity.

With regard to Plaintiff's claims against Boren, the Court found that Plaintiff's "best case" supported by the evidence is as follows: (1) Plaintiff complained to Boren and other supervisors of race and sex discrimination in person and in writing;[4] (2) Boren transferred Plaintiff to a job with fewer advancement opportunities and disciplined her for alleged insubordination; and (3) there was sufficient evidence to establish a causal connection between the employment actions and Plaintiff's complaints. (Order on MSJ 44-49; *see also id.* at 4-31 (reciting facts, viewed in the light most favorable to Plaintiff).) Thus, the Court found that Plaintiff made out a prima facie case of retaliation based on her complaints of race (and sex) discrimination. In response, Defendants proffered nonretaliatory reasons for Boren's actions, namely (1) Plaintiff was not qualified to remain in her pre-transfer job; (2) Boren transferred Plaintiff prevent further discrimination; and (3) Plaintiff was insubordinate and deserved the discipline. However, the Court also found that a jury could conclude that each of these

---

[4]In addition to providing a written grievance, Plaintiff spoke with Boren and her supervisors about her complaints; her direct supervisors knew that part of her complaint related to race discrimination; and her supervisor and Boren conferred regarding Plaintiff's complaints on the day that Plaintiff made them.

8

proffered reasons was pretext for retaliation because (1) there was evidence that Defendants planned to keep Plaintiff in her pre-transfer job; (2) Plaintiff's transfer was effectively a demotion, which is not a permissible means to combat discrimination;[5] and (3) the discipline was not proper because Plaintiff was not informed that there was an official investigation of her alleged insubordination and potentially exculpatory evidence was lost or destroyed. (Order on MSJ 44-49; *see also id.* at 4-31.) In light of this evidence, the Court concluded that if a jury accepted Plaintiff's "best case" as true, it could reasonably find that Boren took adverse employment actions against Plaintiff as retaliation for her complaining about discrimination. Such retaliation is clearly prohibited by well established law. Again, a jury (not this Court or the Court of Appeals) must determine whether Plaintiff's best case is true. When that determination is made, the Court will be able to issue a final ruling on Boren's qualified immunity.

Defendants now appear to argue that a reasonable officer in Boren's shoes would have taken the same actions absent any retaliatory motive and that Boren should therefore receive qualified immunity. However, the objective reasonableness of Boren's actions is irrelevant where, as here, sufficient evidence exists for a jury to disbelieve Boren's proffered nonretaliatory reasons (*i.e.*, his

---

[5] The Court notes that some officers subject to the investigation into Plaintiff's grievance were placed on temporary administrative assignment pending the outcome of the investigation, but they were not transferred out of their unit until the investigation concluded.

"reasonable" reasons) and find that his sole motivation was retaliatory. The Court has not found that Boren is not entitled to qualified immunity. The jury may very well find that Plaintiff's version of the facts is not true. In that case, Boren will be entitled to qualified immunity. However, because genuine issues of material fact exist, that determination is premature and cannot be made based upon the pretrial record. Thus, finding that genuine issues of material fact exist as to whether Boren retaliated against Plaintiff because of her complaints of race discrimination and further finding that if such retaliation occurred it would be a clear violation of § 1981, the Court denied Boren's motion for summary judgment on his qualified immunity defense.

CONCLUSION

The issue presently before the Court is not whether its rulings on Defendants' motions for summary judgment were erroneous. The issue is whether those rulings are immediately appealable. Since those rulings denied summary judgment on the qualified immunity defenses based upon the finding of genuine issues of material fact, it is clear that those rulings are not immediately appealable. In light of the clearly established legal precedent on this issue, Defendants have no reasonable expectation to believe that such rulings are immediately appealable. Accordingly, Plaintiff's right to her day in court should be delayed no longer, and Defendants' motion for a stay must be, and is hereby, denied.

10

The trial of this case shall commence at 9:00 A.M. on September 15, 2008 or as soon thereafter as it may be reached.

IT IS SO ORDERED, this 18th day of August, 2008.

<u>S/Clay D. Land</u>
     CLAY D. LAND
UNITED STATES DISTRICT JUDGE