IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ALICIA DAVENPORT,            *

     Plaintiff,          *

vs.                   *      CASE NO. 4:06-CV-150 (CDL)

CITY OF COLUMBUS, GEORGIA, *et*   *
*al.*,
                    *

     Defendants.
                    *

## O R D E R

Presently pending before the Court is Plaintiff's Motion for Award of Attorneys' Fees (Doc. 175).[1]  As discussed below, the Motion is granted, as modified by the Court.  The Court declines to award Plaintiff $332,069.50 as requested.  The Court awards Plaintiff attorneys' fees in the amount of $119,762.25.

### BACKGROUND

Plaintiff Alicia Davenport was employed as an undercover police officer with the Columbus Police Department.  She filed a Complaint against the Columbus Consolidated Government ("Columbus" or "the City") and ten individual Defendants alleging that Defendants discriminated against her because of her race and gender, subjected her to a hostile work environment based on her gender, and retaliated against her for complaining of discrimination.  Specifically, Plaintiff claimed that Defendants (1) subjected her to unfavorable

---

[1] Plaintiff also submitted a Bill of Costs (Docs. 172 & 174).  Costs will be taxed by the Clerk, so the Court does not address the Bill of Costs in this Order.

working conditions because of her race and gender in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981") and the Equal Protection Clause (through 42 U.S.C. § 1983), (2) subjected her to a hostile work environment because of her gender in violation of Title VII, (3) retaliated against Plaintiff for complaining about race and gender discrimination in violation of Title VII and § 1981, (4) violated Plaintiff's First Amendment rights, (5) negligently retained and supervised Columbus employees, in violation of state law, and (6) intentionally inflicted Plaintiff with emotional distress, in violation of state law.  During discovery, Plaintiff voluntarily dismissed Defendant Hugley from the case.  (Stipulation of Dismissal of Def. Hugley, Doc. 25, Oct. 2, 2007.)

Defendants filed a motion for summary judgment, and the Court granted the motion as to all of Plaintiff's claims against Defendants Poydasheff, Hawk, Todd, Swiney and Barron.  (Order on Defs.' Mot. for Summ. J. 66, Doc. 103, July 23, 2008 [hereinafter MSJ Order].)  The Court also granted Defendants' motion for summary judgment as to Plaintiff's sexual harassment claims, Plaintiff's § 1981 discrimination claims against the City, claims arising from Plaintiff's voluntary transfer to the Marshal's office, Plaintiff's equal protection claims against the City, Plaintiff's First Amendment claims, and Plaintiff's state law claims.  (*Id.* at 65-66.)  Following the summary judgment order, the only Defendants remaining were Columbus, Boren, Horiuchi, Spear and Walton, and the only claims

2

remaining were Plaintiff's race and gender discrimination claims based upon alleged unfavorable working conditions and Plaintiff's retaliation claims based upon Plaintiff's transfer from the Vice unit to the Patrol division and a September 2006 Letter of Transfer. Following issuance of the summary judgment Order, Plaintiff voluntarily dismissed her claims against Chief Boren. (Stipulation of Dismissal of Def. Boren, Doc. 138, Aug. 29, 2008.)  Thus, the only Defendants remaining in the case at trial were Columbus, Horiuchi, Spear and Walton.

After a seven-day trial, the jury found that Defendants Columbus, Spear, Horiuchi and Walton discriminated against Plaintiff in her undercover working conditions because of Plaintiff's gender. (Verdict 1-3, Sept. 25, 2008.)  The jury awarded Plaintiff $5,000.00 on her gender discrimination claim, which was brought under Title VII and the Equal Protection Clause/§ 1983.  (*Id.* at 3.)  The jury found that Defendants did not discriminate against Plaintiff because of her race (*id.* at 1-2), and that Defendants did not retaliate against Plaintiff for complaining about employment discrimination (*id.* at 5).

Plaintiff moved for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2)(B) and Middle District of Georgia Local Rule 54.1.  She seeks attorneys' fees in the amount of $332,069.50.[2]  In

---

[2]Plaintiff initially sought $354,189.50 in attorneys' fees, which encompassed some cuts for redundancies and an across-the-board percentage cut to account for unsuccessful claims.  In reply to Defendants' opposition to her fee request, Plaintiff further reduced her fee request for (1) time spent taking depositions that were for use in both this

support of her motion, Plaintiff submitted the affidavits of her
attorneys Gwyn Newsom, Richard Bunn, Maxine Hardy and the affidavit
of Newsom and Bunn's legal assistant Sheryl Herring.  She also
submitted supporting affidavits from attorneys Charles Gower and
Janet Hill.  In addition, Plaintiff submitted a table of time entries
documenting her legal team's total time expended on this case (Ex. A
to Pl.'s Reply in Supp. of Pl.'s Mot. for Award of Atty's' Fees
[hereinafter Pl.'s Reply]), as well as a table of time entries
reflecting the legal team's claimed time (Ex. B to Pl.'s Reply).
Although Plaintiff's records show that her legal team expended more
than 2,000 hours on this case, Plaintiff is seeking fees for 1,126.5
hours of time expended on this case: 22.5 hours for pre-filing
activities, 138.1 hours for discovery, 112.5 hours for summary
judgment response, 476.7 hours for trial preparation, 282.2 hours for
trial, and 94.5 for post-trial work.  (Ex. C to Pl.'s Reply.)

     Plaintiff contends that her fee request excludes time which
Plaintiff's counsel found to be attributed solely to unsuccessful
claims.  Plaintiff asserts that the fee request encompasses a 25%
reduction to account for unsuccessful claims.  The fee application
also makes further reductions to individual time entries to account
for excessive billing and redundancies.[3]  Plaintiff contends that the

---

action and in *Hickey v. Columbus Consolidated Government, et al.*, No.
4:07-CV-96 and (2) time spent by attorney Bunn on pre-trial discovery.

     [3]Plaintiff seeks to recover for 58% of the total time attorney Newsom
spent on the case, 48% of the total time attorney Bunn spent on the case,
66% of the total time attorney Hardy spent on the case, and 52% of the

time claimed was necessary for Plaintiff to prevail on her gender discrimination claim and would have been necessary even if Plaintiff had not pursued her other claims.  Based on the claimed hourly rates for the attorneys and legal assistant, the claimed time results in a claimed fee of $332,069.50.  Plaintiff argues that this fee is warranted because she obtained substantial relief and deserves compensation for vindicating an important public interest.

In response, Defendants contend that a further reduction in fees is necessary because Plaintiff obtained only limited success and spent many hours on unsuccessful claims.  First, Defendants contend that the Court should reduce the fees by reducing the number of hours to address overstaffing, inefficiencies and Plaintiff's failure to prevail on claims that were separate and distinct from Plaintiff's prevailing gender discrimination claim.  Second, Defendants contend that the Court should use a lower hourly rate than the rates proposed

---

total time legal assistant Herring spent on the case.  Plaintiff represents in her motion for attorneys' fees that she made a 25% across-the-board reduction to the claimed hours to account for unsuccessful claims.  (Pl.'s Mot. for Award of Att'ys' Fees 12.)  Some of the time entries in Plaintiff's detailed time table specifically state that Plaintiff reduced the claimed time by 25% to account for unsuccessful claims.  Others do not, making it difficult to tell from the time entry whether a reduction was taken to account for excessive billing or to account for unsuccessful claims or both.  However, based on Plaintiff's representation that she made a 25% across-the-board cut to her fee request to account for unsuccessful claims, the Court assumes that the remaining cuts were made to account for redundancies and excessive hours.  The Court further assumes that Plaintiff subtracted the redundant and excessive time before making the 25% across-the-board cut.  Therefore, the Court concludes that Plaintiff excluded the following redundant or excessive hours from her fee request: 227.3 hours billed by Newsom, 120.9 hours billed by Bunn, 38.1 hours billed by Hardy, and 117.0 hours billed by Herring.

by Plaintiff.   Defendants do not request a specific reduction.
Rather, they point out that there is no precise formula for making
fee determinations and ask that the Court make an appropriate
reduction.

DISCUSSION

**I.   Attorneys' Fees Standards**

The Court in its discretion may award a reasonable attorney's
fee to the prevailing party.   42 U.S.C. §§ 1988(b), 2000e-5(k).
Defendants do not seriously dispute that Plaintiff is the prevailing
party in this action.   *See Tex. State Teachers Ass'n v. Garland
Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (noting that a party
is a "prevailing party" if she succeeded on "any significant issue in
litigation" that achieved "some of the benefit" she sought in
bringing suit (internal quotation marks omitted)).   The Court finds
that Plaintiff is the prevailing party in this action because she
sought to prove employment discrimination, and the jury found that
Defendants Columbus, Horiuchi, Spear and Walton discriminated against
Plaintiff because of her gender.

"There is no precise rule or formula" for making a fee
determination, but the starting point for calculating a reasonable
fee is "the number of hours reasonably expended on the litigation
multiplied by a reasonable hourly rate."   *Hensley v. Eckerhart*, 461
U.S. 424, 433, 436 (1983).   The resulting product is the lodestar,
and there is a "strong presumption" that the lodestar figure

6

represents a reasonable fee.  *Pennsylvania v. Del. Valley Citizens'
Council for Clean Air*, 478 U.S. 546, 565 (1986).  After the Court
calculates the lodestar, the Court may adjust the fee upward or
downward based on the results obtained.  *Hensley*, 461 U.S. at 434;
*see also Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d
1292, 1302 (11th Cir. 1988).

## II.  **Hours Reasonably Expended**

Fee applicants must exercise billing judgment.  *Hensley*, 461
U.S. at 434.  This means that fee applicants must exclude from their
applications "excessive, redundant or otherwise unnecessary"
hours—"which are hours 'that would be unreasonable to bill to a
client and therefore to one's adversary.'" *Am. Civil Liberties Union
v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836
F.2d at 1301).  "[A] lawyer may not be compensated for hours spent on
activities for which he would not bill a client of means who was
seriously intent on vindicating similar rights[.]" *Norman*, 836 F.3d
at 1301.  Furthermore, "[w]here the plaintiff has failed to prevail
on a claim that is distinct in all respects from his successful
claims, the hours spent on the unsuccessful claim should be excluded
in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at
440; *Norman*, 836 F.2d at 1302.

In evaluating the number of hours, the Court should exclude
hours that were not reasonably expended by counsel, making exclusions
for excessive or unnecessary work on given tasks.  *Hensley*, 461 U.S.

at 434; *Norman*, 836 F.2d at 1301.   While the Eleventh Circuit has directed district courts to be "reasonably precise in excluding hours thought to be unreasonable or unnecessary," *Norman*, 836 F.2d at 1301, the Eleventh Circuit also recognizes that an hour-by-hour review may in some cases be infeasible or impractical, *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (per curiam).

Defendants argue that the number of hours Plaintiff claims is inflated because Plaintiff overstaffed her case and because Plaintiff's counsel seeks fees for time spent on unsuccessful claims. Objections to fee applications must be "specific and reasonably precise."   *Barnes*, 168 F.3d at 428 (internal quotation marks omitted).   Here, however, Defendants did not submit a thorough analysis of the billing records or object to individual line items. Rather, Defendants' opposition to the fee application is broadly painted in terms of general principles and does not put forth precise calculations designed to show how Plaintiff's counsel failed to exercise proper billing judgment.[4]

A.   Redundant or Excessive Time

Defendants contend that Plaintiff "over-lawyered" by having two lawyers work on pre-trial matters and having three lawyers work on

_____

[4]Defendants do offer one example of "wasted" trial time: they assert that Plaintiff's counsel spent excessive trial time fruitlessly exploring a theory regarding administrative reporting for undercover officers. The Court does not recall the evidence being completely fruitless; while the evidence may not have provided a conclusive and dramatic impact, it was relevant for several reasons, including discrediting Defendants' theory that Plaintiff sat home idle instead of doing undercover work.

8

the trial.[5]  Other than noting that Hardy had to learn the file from scratch[6] and that the time Bunn spent on discovery appeared somewhat redundant of Newsom's time, Defendants do not present any evidence that staffing the case with three lawyers and one legal assistant was unreasonable, and Defendants present no evidence of what the total fees would have been without Hardy's or Bunn's participation.  Again, Defendants do not point to individual time entries which they contend are excessive or redundant.

"There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."  *Norman*, 836 F.2d at 1302.  A fee applicant may recover for the hours of multiple attorneys if she shows that "the time spent by those attorneys reflects the distinct

---

[5]The Court notes that Defendants had four attorneys to Plaintiff's three.  Defendants argue that while two of the City's in-house attorneys are listed as counsel of record in this action, signed all of the pleadings and briefs, and sat at counsel table throughout the trial, they did not take an active part in the case and therefore did not add expense to the case.  While the in-house lawyers may not have *billed* the City for their time on this case, that does not mean their work on the case did not *cost* the City something.  For example, the City's in-house attorneys were not able to spend time on other City legal matters while they were attending the trial.

[6]According to the Court's calculations, Hardy claims approximately 16 hours in August 2008 for reviewing the pleadings, documents and depositions in preparation for trial.  (*See* Ex. B to Pl.'s Reply, entries dated 8/1, 8/2, 8/3, 8/9, 8/10, 8/11, 8/12, 8/15, 8/23, 8/24, 2008.)  To function competently, each attorney must be familiar with the case's facts and issues.  The Court finds that it was reasonable for Hardy to spend 16 hours to become familiar with the proceedings in order to represent Plaintiff effectively during trial.

contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Barnes*, 168 F.3d at 432.

In response to Defendants' general objection regarding the fee request for the time Bunn spent on discovery, Plaintiff reduced the requested number of hours for Bunn's time from 58.4 to 17.1.[7] (*See, e.g.,* Ex. B to Pl.'s Reply, entries dated 12/14/2007 (reducing hours claimed for Bunn's time on two depositions and a client conference from 6.5 hours to 0 hours).)  Based on the time entries provided by Plaintiff, as well as the affidavits of Newsom and Bunn, the Court finds that Bunn made distinct contributions to the case during discovery by helping Newsom prepare for multiple depositions, reviewing documents produced by Defendants and defending a deposition.  The Court therefore concludes that Plaintiff's request for 17.1 hours of Bunn's time on discovery is not unreasonable.

Regarding the trial work of Plaintiff's counsel, the Court concludes that Newsom, Bunn and Hardy were not unreasonably doing the same work during trial or in preparation for trial.  Based on the time entries provided by Plaintiff, as well as the affidavits of Newsom, Hardy and Bunn, it is clear that each attorney had responsibility for different aspects of the trial, and the Court is aware that this is the customary practice of multiple-lawyer

---

[7]Plaintiff also reduced the time claimed to account for the fact that certain depositions were taken in part for this action and in part for Byron Hickey's case against the City. (*See, e.g.,* Ex. B to Pl.'s Reply, entry dated 12/11/2007 (reducing time claimed for Defendant Spear's deposition by 50%).)

litigation.   Furthermore, the Court observed during the pre-trial conference and during trial that each of Plaintiff's attorneys took responsibility for separate witnesses, exhibits, motions and arguments.

For these reasons, the Court finds that it was not unreasonable for Plaintiff to have two attorneys prosecute her case prior to trial and that it was not unreasonable for Plaintiff to have three attorneys try her case.  (*See also* Gower Aff. ¶¶ 13-14, Oct. 29, 2008; Hill Aff. ¶ 15, Nov. 10, 2008.)   The attorneys were not doing the same work, and each made a distinct contribution.

### B.   Discrete Unsuccessful Claims

Defendants also contend that the Court should exclude time spent on Plaintiff's unsuccessful claims.  Plaintiff's case boils down to two distinct types of claims: discrimination and retaliation.  While some of the facts regarding the investigation of Plaintiff's discrimination grievance are relevant to both types of claims, the bulk of the facts can be divided neatly into "pre-grievance" (discrimination) and "post-grievance" (retaliation).[8]   Plaintiff's discrimination legal theories are entirely separate and distinct from her retaliation legal theories.

---

[8]The Court notes that had Plaintiff prevailed on a retaliation theory instead of a discrimination theory, this analysis would be different because facts regarding the discrimination claim would be relevant to the question whether Plaintiff engaged in protected activity.

As discussed above, Plaintiff prevailed on her gender discrimination claim at trial, though she lost on the related race discrimination claim at trial and the related hostile work environment claim at summary judgment. Plaintiff lost the following discrete claims: employment and First Amendment retaliation claims, and her state law claims. The Court must deduct time spent on these discrete and unsuccessful claims. *Hensley*, 461 U.S. at 440; *Norman*, 836 F.2d at 1302. Unfortunately, Plaintiff's billing records do not explain the claims to which each time entry relates. The Court recognizes that if a party's fee application does not permit easy division between compensable and non-compensable hours, the party is often required to refashion its request. *Barnes*, 10 F.3d at 782 (noting that fee applicant should have clearly distinguished between compensable federal litigation and non-compensable other matters). Here, however, the Court does not believe that it would receive further clarity by asking Plaintiff to refashion her fee application; the Court already asked Plaintiff to make it clear which entries relate to which claims, and she did not, or could not, do so. The time entries relate to specific tasks, such as deposing witnesses or drafting motions, but they are not parsed out into the amount of time spent on each individual claim, such as "deposed witness on gender discrimination claim" or "responded to summary judgment on retaliation claim." With the exception of a handful of tasks which Plaintiff appears to concede relate solely to unsuccessful claims

12

(which Plaintiff has already excluded),[9] it would be difficult, if not impossible, to attribute the time entries to "successful" or "unsuccessful" claims. The Court therefore concludes that an across-the-board reduction of hours to account for unsuccessful claims is appropriate, as Plaintiff suggests.

The Court is not convinced, however, that the 25% reduction which Plaintiff suggests is sufficient. Again, Plaintiff brought two main types of claims against Defendants: discrimination and retaliation. These claims were, for the most part, separate and distinct from each other. Plaintiff lost her retaliation claim.[10] Accordingly, the Court concludes that a 50% reduction is warranted to account for Plaintiff's separate and distinct unsuccessful claims. The Court therefore finds that the following hours were reasonably expended by Plaintiff's counsel:[11] (1) Newsom - 376.7 hours, (2) Bunn - 107.3 hours, (3) Hardy - 133.3 hours, and (4) Herring - 133.8 hours.

---

[9]For example, Plaintiff does not seek fees for deposing Mike Griffin and Stan Swiney; their testimony was relevant chiefly to Plaintiff's retaliation claims. (*See* Ex. A to Pl.'s Reply, entries dated 12/11/2007.)

[10]The Court notes that Plaintiff focused roughly half of her summary judgment briefing on the discrimination claims and roughly half on the retaliation. Though not dispositive, this breakdown does provide some helpful guidance on how, as a practical matter, Plaintiff's counsel approached the issues in this case.

[11]Before applying the reduction, the Court first subtracted the hours which it found Plaintiff excluded as redundant or excessive, *see supra* note 3. Therefore, the starting point for the percentage reduction is (1) Newsom - 753.3 hours, (2) Bunn - 214.5 hours, (3) Hardy - 266.5 hours, and (4) Herring - 267.6 hours.

**III. Reasonable Hourly Rate**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.  Here, the relevant market is Columbus, Georgia, because that is where the case was filed.  *See Barnes*, 168 F.3d at 437; *see also Norman*, 836 F.2d at 1305 (noting that fee award made in Northern District of Alabama did not constitute evidence of the prevailing market rate in Montgomery).  Plaintiff has the burden to produce "satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299.  The evidence should show that the claimed rates "were charged in similar cases for similar clients by lawyers of similar skill, experience and reputation." *Id.* at 1305.  "[T]he best information available to the court is usually a range of fees set by the market place, with the variants best explained by reference to an attorney's demonstrated skill." *Id.* at 1301.  What a lawyer charges his paying clients "is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as determined by supply and demand." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) (per curiam) (internal quotation marks omitted).

Newsom, Bunn and Hardy are all experienced Columbus litigators: Bunn has been practicing law for nearly thirty years, and both Newsom and Hardy have been practicing for 17 years.  Bunn has a general

14

practice but has worked on numerous employment cases, and Newsom and Hardy specialize in employment law.  Plaintiff contends that a reasonable hourly rate for Newsom is $350.00 per hour and that a reasonable hourly rate for Bunn and Hardy is $325.00 per hour. Newsom, Bunn and Hardy assert that they "billed" at the requested rates in this case, but they do not assert that these rates were actually billed *and paid* in this case.  (*See* Bunn Aff. ¶ 7, Nov. 7, 2008; Hardy Aff. ¶ 6, Nov. 10, 2008; Newsom Aff. ¶ 7, Nov. 10, 2008.)

As evidence of the typical Columbus rate for lawyers of the same caliber as Plaintiff's counsel, Plaintiff points to the affidavits of Charles Gower and Janet Hill, as well as the affidavits of Newsom, Bunn and Hardy.  Gower and Hill, who both practice law in Columbus (among other markets), aver that they are familiar with the hourly rates actually billed and paid in comparable cases, but they do not explain what the range of hourly rates is, except to say that the rates sought by Plaintiff are within the range.  (Gower Aff. ¶¶ 10, 12; Hill Aff. ¶¶ 9-10.)  This testimony does not "speak to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299, 1304.  It is therefore entitled to little weight.  Plaintiff also points to evidence of prior fee awards and the equivalent hourly rates paid to the attorneys as a result of settlements.  However, neither agreed-upon rates for settlement purposes nor prior awards are strong evidence of the prevailing market rates because neither is

direct evidence of market behavior. *Dillard*, 213 F.3d at 1355 ("[T]he court is not a legal souk.").

Defendants also presented the Court with declarations regarding the prevailing market rate in Columbus. First, Defendants' counsel Miller, who practices law in Columbus and has thirteen years of legal experience, asserts that her hourly rate in this case was $150 and that her hourly rate that was billed and paid in a recent plaintiff's employment discrimination case was $175. (Miller Decl. ¶¶ 5-6 (erroneously numbered 3-4), Dec. 2, 2008.) Second, Defendants presented the declaration of Susan Rutherford, an Atlanta attorney who has practiced law for 25 years and has represented clients in the Middle District of Georgia. (Rutherford Decl. ¶¶ 3-4, Dec. 4, 2008.) Rutherford specializes in employment law and also has expertise litigating governmental immunity issues. (*Id.* ¶¶ 3, 5.) Rutherford's hourly rate for plaintiff's work is between $150 and $225 per hour. (*Id.* ¶ 6.) Finally, Defendants presented the declaration of Bryan Webb, an Athens attorney with sixteen years of experience. (Webb Decl. ¶ 3, Dec. 2, 2008.) Webb's practice focuses on employment discrimination, and he represents clients in the Middle District of Georgia. (*Id.* ¶¶ 3, 6.) Webb's hourly rate ranges from $125 to $200 per hour. (*Id.* ¶ 7 (erroneously numbered 6).) The Court notes that Miller's clients here are not "similar clients" to Plaintiff; defending a case for a government entity is not the same as prosecuting a case on behalf of an aggrieved employee.

16

Furthermore, it is not entirely clear from the declarations of Rutherford and Webb that their attested hourly rates were charged in similar cases for similar clients. For these reasons, the Court finds that Defendants, like Plaintiff, have not presented particularly strong evidence of the prevailing market rate for Columbus lawyers with the skill, experience and reputation of Plaintiff's lawyers.

Based on evidence before the Court (scant though it is) and the Court's own experience, the Court concludes that a reasonable hourly rate for attorneys (1) with skill, experience and reputation comparable to that of Plaintiff's attorneys, (2) practicing in Columbus, Georgia, and (3) representing a plaintiff in an employment discrimination case against a municipality is between $200 and $250. Accordingly, the Court finds that an hourly rate of $250 is reasonable for Newsom's work on this case and that an hourly rate of $225 is reasonable for Bunn and Hardy's work on this case. Defendants do not challenge the rate of $85 per hour for legal assistant Herring's work. The Court notes that the paralegal for Defendants' counsel also bills at a rate of $85 per hour. (*See* Miller Decl. ¶ 6 (erroneously numbered 4).) Accordingly, the Court finds that $85 per hour is a reasonable hourly rate for legal assistant Herring's work.

## IV.  Calculation of the Lodestar

Based on the foregoing considerations, the lodestar amounts to $159,683.00, as reflected in the table below:

| Name | Hours | Hourly Rate | Recoverable Fees |
|------|-------|-------------|------------------|
| Newsom | 376.7 | $250.00 | $94,175.00 |
| Bunn | 107.3 | $225.00 | $24,142.50 |
| Hardy | 133.3 | $225.00 | $29,992.50 |
| Herring | 133.8 | $85.00 | $11,373.00 |
| **Total** | **751.1** | | **$159,683.00** |

## V.   Adjustment to the Lodestar

The Court may adjust the fee upward or downward based on results obtained.  *Hensley*, 461 U.S. at 434.  If the plaintiff obtained "excellent results," then her attorney should recover "a fully compensatory fee."  *Id.* at 435; *see also Norman*, 836 F.2d at 1302. If, however, the prevailing party succeeded on only some of her claims for relief, the Court must determine whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award.  *Hensley*, 461 U.S. at 434 (noting that plaintiff in that case prevailed on five of six claims, justifying a full fee award, but suggesting that claimed hours would have been excessive had the plaintiff prevailed on only one of six claims).  The fee award should not be reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Id.* at 435.  "A reduction is appropriate if the

18

relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Norman*, 836 F.2d at 1302.  It is not appropriate to reduce the lodestar based on a simple ratio of successful issues to issues raised; "[w]here all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." *Id.*  In making a reduction for limited or partial success, "the court may attempt to identify specific hours spent on unsuccessful claims or it may simply reduce the award by some proportion." *Id.*  "In the end, of course, the result is the same whether you adjust the fee itself or the number of hours spent[.]" *Dillard*, 213 F.3d at 1355 n.9.

Defendants contend that a reduction is warranted here because Plaintiff had limited success.  As discussed above, the Court has already made "above the line" adjustments to the fee by subtracting the number of hours spent on discrete and unsuccessful claims before calculating the lodestar.  The Court also found that Plaintiff's successful claim—her gender discrimination claim—was related to her unsuccessful race discrimination and hostile work environment claims.[12]  The question remaining is whether Plaintiff achieved a

---

[12]Evidence regarding Plaintiff's undercover working conditions was relevant to both her race discrimination claim and her gender discrimination claim, and, for the most part, the parties and the Court addressed the legal issues regarding both claims together without making significant distinctions between them.  Evidence regarding Plaintiff's unsuccessful sexual harassment claim was intertwined with evidence regarding Plaintiff's gender discrimination claim based on her undercover working conditions, though the legal argument was distinct.

19

level of success that makes the lodestar hours reasonably expended a satisfactory basis for making the fee award.  Defendants argue that the lodestar should be reduced because Plaintiff only succeeded on one of her discrimination claims and received only $5,000.00 from the jury.

When an important right is vindicated, "the fact that the monetary result was small may not always control.  This is particularly the case where the outcome promotes some public purpose."  *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (per curiam) (internal quotation marks omitted).  Thus, although the amount of damages awarded may be considered as an indicator of success, it is not the only factor.  Vindicating an important right against a municipal defendant "heightens the public benefit created by a lawsuit," and the Court must not place undue emphasis on modest money damages.  *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306-07 (11th Cir. 2001).

The Court recognizes the significance of a jury finding that three City employees who supervised Plaintiff discriminated against her because of her gender.  However, the significance of this finding is diminished when evaluated in light of the relief awarded by the jury and when compared to the scope of the entire litigation. Plaintiff's own attorneys have expressed their profound disappointment in the result, describing the relief awarded as so "paltry" that it "shocks the conscience" and "makes a mockery" of the

federal employment laws.  (Pl.'s Mot. for New Trial 2-3, Doc. 168.)
Without minimizing the seriousness of gender discrimination in the
workplace by immediate supervisors, the Court observes that
Plaintiff's case asserted more than gender discrimination by three
low-ranking police officers.  The thrust of her claim was that the
three individual Defendants' conduct was so egregious that it
warranted substantial punitive damages and that a disregard for the
federal employment laws permeated the Columbus Police Department,
leading to the very top, the Chief of Police.  The jury, however,
awarded Plaintiff damages barely in excess of her out-of-pocket
expenses and expressly found that Defendants' conduct did not justify
punitive damages.  The jury also exonerated the Chief of Police
completely.  If a downward adjustment of the lodestar is not
warranted in this case, then such adjustment could never be justified
in a case where the jury finds some violation of the federal
employment laws.  Just as a small monetary recovery is not alone
determinative of whether a downward adjustment to the lodestar is
appropriate, the finding of employment discrimination alone is not a
justification for awarding an employee the full lodestar amount.
Based on Plaintiff's lack of success in this case, the Court finds
that the lodestar amount should be adjusted downward 25% to take into
consideration what Plaintiff's counsel readily concedes was a
"shockingly" "paltry" recovery on the only claim upon which Plaintiff

prevailed.[13]   Accordingly, the Court finds that Plaintiff should recover attorneys' fees in the amount of $119,762.25.

CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Award of Attorneys' Fees (Doc. 175), as modified by the Court. The Court awards Plaintiff attorneys' fees in the amount of $119,762.25.


IT IS SO ORDERED, this 30th day of January, 2009.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[13]The Court emphasizes that this reduction in the lodestar is not duplicative of the reduction previously made for unsuccessful claims in arriving at the lodestar amount.  This reduction in the lodestar is based upon the lack of success Plaintiff had on the only claims for which the jury found in her favor at all.